# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | : | Bankruptcy No. 01-50184 |
| JOHN BRIAN HAWORTH, Debtor | : | |
| | : | |
| | : | Civil Action No. |
| JEFFERY DIEFFENBACH, Appellant | : | 3:06 CV 403 (CFD) |
| | : | |
| v. | : | |
| JOHN BRIAN HAWORTH, Debtor | : | |
| JEAN HAWORTH, his Wife | : | |
| BARBARA KATZ, Trustee | : | |
| UNITED STATES TRUSTEE, | : | |
| Appellees | : | |

## RULING ON BANKRUPTCY APPEAL

Appellant *pro se* Jeffery Dieffenbach[1] has appealed the decision of the Bankruptcy Court in the no-asset Chapter 7 bankruptcy case of John Haworth. Dieffenbach appeals the Bankruptcy Court's orders refusing to remove Trustee Barbara Katz and denying Dieffenbach's Motion for Damages for Willful Violation of the Automatic Stay of January 31, 2006.[2] Dieffenbach claims that he is a creditor of the estate and argues that Katz should have been removed as trustee because she failed to acknowledge and administer cash assets of the estate exceeding $1 million as required by 11 U.S.C. § 704(1), did not furnish information concerning the estate as requested by a party in interest, as required by 11 U.S.C. § 704(7), and violated her fiduciary duty by failing to act in good faith when she offered to sell all causes of action held by the estate to Dieffenbach.

---

[1]Dieffenbach is an attorney.

[2]Orders of Bankruptcy Judge Alan H.W. Shiff, Feb. 7, 2006 denying Dieffenbach's motion (Bankr. Case No. 01-50184 AHWS, Dkt. #132) and sustaining the objections of the United States Trustee (Dkt. #134) and of Trustee Katz (Dkt. #133).

-1-

He also argues that the Bankruptcy Court incorrectly relied on Trustee Katz's advice that an annulled Automatic Stay precluded Dieffenbach's request for damages resulting from the debtor and his wife's alleged violation of the automatic stay during a state court proceeding of March 19, 2001, and that the Bankruptcy Court erred by denying his request without considering its merits. For the reasons set forth below the Bankruptcy Court's decisions are affirmed.

**I.     Background**

John Haworth (the "Debtor") filed a no-asset Chapter 7 bankruptcy petition on February 16, 2001. Haworth's wife did not join her husband in filing for bankruptcy protection. Roberta Napolitano was appointed trustee of the bankruptcy estate. Haworth was discharged on June 12, 2001; Napolitano filed a Report of No Distribution on September 4, 2001 and the case was closed on September 12, 2001.

Unrelated to the bankruptcy case, Dieffenbach, the Haworths' former son-in-law, had previously stipulated as defendant, with John and Jean Haworth as plaintiffs, that a judgment in the Connecticut Superior Court would enter against him and in favor of the plaintiffs for $30,000. On February 13, 2001, the plaintiffs agreed to accept $10,000 from Dieffenbach in settlement of the claim.[3] Then, in the fall of 2002, Dieffenbach learned of the Debtor's bankruptcy case, which had been closed. On June 29, 2004, Dieffenbach requested that the

---

[3]Dieffenbach did not file any counterclaim in the Superior Court proceeding. Before Dieffenbach or the state court became aware of the bankruptcy petition, Dieffenbach pursued, and the Superior Court denied, a motion to set aside the stipulated judgment. Dieffenbach based his motion on his assertion that the return of certain items of furniture was a condition of the settlement of the Superior Court judgment, and that this condition had not been fulfilled. See Transcript of Proceedings before the Bankruptcy Court, Oct. 25, 2005. Dieffenbach's alleged claim to the furniture appears to have originated with his divorce from the Debtor's daughter in the Connecticut Superior Court. The Court in the instant action does not address the substantial issue of whether Dieffenbach is a creditor for the purpose of standing under 11 U.S.C. § 101(10).

bankruptcy case be re-opened, claiming that he was a creditor of the estate because the Debtor and his wife possessed two pieces of valuable furniture that they refused to return to Dieffenbach, and that the estate owned substantial undisclosed assets. The Debtor denied that Dieffenbach was a creditor or that any assets existed. Trustee Napolitano met with Dieffenbach, reviewed his documents and arguments, and concluded that he was not a creditor and that there were no grounds to reopen the bankruptcy estate. Bankruptcy Judge Shiff reopened the estate "for the limited purpose of considering the movant's request to file a proof of claim and request an order voiding the state court judgment as in conflict with the automatic stay." (Dkt. #41). Judge Shiff ordered the United States Trustee to appoint a successor trustee in the bankruptcy case, and Barbara Katz was appointed on February 18, 2005. Trustee Katz also concluded upon her initial review that the estate was a no-asset case. Judge Shiff directed Katz to search for assets, meet with Dieffenbach, and file a report with the Court.

Trustee Report by Katz Regarding Potential Assets of the Estate

Katz's report included consideration of the Debtor's marital home, which was purchased by the Debtor and his wife in 1976. The Debtor had transferred his interest in the property in December 1994 by quitclaim deed to his wife, but remained married and continued to live there after that time. In February 2004, Mrs. Haworth conveyed the property by quitclaim deed to the Debtor and herself as joint tenants with rights of survivorship and the property was sold shortly thereafter. The net assets from the sale were placed into the sole custody of Mrs. Haworth.

Although Katz concluded that it was probable that the 1994 transfer of the property from the Debtor to his wife was voidable as a fraudulent transfer under Connecticut law, see C.G.S. §§ 52-552a-52-552l, the four-year statute of limitations to avoid a fraudulent transfer expired in

1998, and therefore the bankruptcy estate could not have voided the transfer in 2001. Katz also considered and cited in her report Connecticut law on resulting trusts. She concluded that no resulting trust existed.[4] Furthermore, Katz believed that in order to prosecute an action against Mrs. Haworth the estate would have to retain an attorney on a contingency fee basis. Katz concluded that she would be unable to find an attorney willing to take the case, considering that Mrs. Haworth lived in England, and that several defense claims and proof issues would have to be overcome.

Katz's report also considered Dieffenbach's claims regarding several alleged undisclosed assets of the estate, including the "Bird in Hand" antique business operated as a sole proprietorship by Mrs. Haworth. The report considered the "implied partnership" argument and concluded that no evidence showed that the Debtor and Mrs. Haworth carried on the business as co-owners, nor that they divided the profits. The business was therefore not an undisclosed asset of the bankruptcy estate.

Finally, the report concluded that the $10,000 settlement received by the Debtor and his wife as a result of the Connecticut Superior Court judgment was subject to an exemption that could have been properly asserted by the Debtor. Therefore it would have been unnecessary for Trustee Napolitano to take possession of the $10,000 only to turn it back over to the Debtor after the exemption was asserted in Court. Collection of the $10,000 was not in violation of the automatic stay, which applies only to non-exempt property of the estate. Finally, Dieffenbach would not be entitled to the return of any portion collected in which Mrs. Haworth had an

---

[4]Although there is some dispute as to the interpretation of the Bankruptcy Court's exact words, the transcripts, when taken in context, indicate that Judge Shiff agreed with Katz that no resulting trust existed.

interest, because her interests (as a non-filer for bankruptcy protection) vis-à-vis Dieffenbach would not have been affected by the automatic stay.

Subsequent Proceedings

A hearing was held on the Trustee's Report on July 19, 2005. Katz reported that although she did not believe the estate to have any assets worth pursuing, she had offered to sell "whatever claims the estate may have" to Dieffenbach to pursue for his own benefit, including the claim as to the alleged resulting trust in the marital home. The offer was held open until on or about October 31, 2005, but was not accepted by Dieffenbach. On October 31, 2005 the Bankruptcy Court annulled the automatic stay *nunc pro tunc* to 2001, and on November 15, 2005, Katz filed a Report of No Distribution.

On January 10, 2006 Dieffenbach filed a motion to remove Katz as trustee. The United States Trustee filed objections to the motion and a hearing was held on January 31, 2006. The Bankruptcy Court denied this motion. Dieffenbach also filed his request for damages on January 10, 2006. The alleged damages included actual damages and attorney's fees, damages due to emotional distress, and the return of the $10,000 he had paid in settlement of the Superior Court judgment. Judge Shiff also denied this request and indicated that the case would be closed. Dieffenbach filed his notice of appeal on February 7, 2006 (amended February 17, 2006).

**II.  Applicable Law**

    **A.  Standard of Review**

Pursuant to Bankruptcy Rule 8013 and caselaw thereunder, a bankruptcy court's conclusions of law are reviewed *de novo*, and its factual findings are reviewed under a "clearly erroneous" standard. In re JLM, Inc., 210 B.R. 19, 23 (2nd Cir. BAP 1997) (citing Nat'l Union

Fire Ins. Co. of Pittsburgh v. Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996)).  Fed. R. Bankr. P. 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  This standard affords great deference to the bankruptcy court's determination.  A finding of fact is clearly erroneous within the meaning of Rule 8013 when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made . . . . While the trial court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden . . . . To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must ... strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish."  In re Reilly, 245 B.R. 768, 772 (2d Cir. BAP 2000), aff'd without opinion 242 F.3d 367 (2d Cir. 2000).  Mixed questions of law and fact are presumptively subject to *de novo* review. Id. (citing In re Bammer, 131 F.3d 788 (9th Cir. 1997)).

**B.     Legal Standards for Removal of and Duties of Bankruptcy Trustees**

The Bankruptcy Court may remove a Trustee "for cause" after notice and a hearing under the authority of 11 U.S.C. § 324(a).  "Cause, which is not defined in the statute, must be determined by the courts on an ad hoc basis.  Cause has been found to exist, *inter alia*, where the trustee is not disinterested, and where the trustee fails to perform his or her duties, or unreasonably delays in the performance of those duties.  In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud.  A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, and courts should consider the best interests of the estate, rather than those of

a single movant-creditor, when determining whether to remove a trustee." In re Lundborg, 110 B.R. 106, 108 (Bankr. D. Conn. 1990) (internal citations omitted).

"A trustee is the fiduciary of all of the creditors of a bankruptcy estate, but owes a primary duty to unsecured creditors." Id. at 109 (internal citations omitted). "In determining whether the trustee has met that duty, the applicable test is whether the trustee has exercised due care, diligence, and skill as measured by a reasonable person standard, i.e., whether the trustee has acted as an ordinarily prudent person would have acted under similar circumstances and with a similar purpose." Id. (internal citations omitted). "A chapter 7 trustee is required to locate and bring into the estate all of the property of the estate; determine whether there is any equity for the estate; and if there is, liquidate the property in an efficient manner and distribute the proceeds to creditors in accordance with the distribution scheme established by the Code." Id. (citing 11 U.S.C. §§ 541(a), 704(1), 726). "As a general rule, a trustee should not abandon property, file a Report of No Distribution, or consent to relief from the automatic stay unless he has determined that the property is of no or 'inconsequential value and benefit to the estate.'" Id. (citing 11 U.S.C. §554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.")).

## III. Discussion

### A. Request for Removal of Trustee Katz

Dieffenbach's first argument is that Katz should have been removed as trustee because she failed to acknowledge and administer cash assets of the estate exceeding $1 million as required by 11 U.S.C. § 704(1), did not furnish information concerning the estate as requested by a party in interest, as required by 11 U.S.C. § 704(7), and violated her fiduciary duty by failing to

act in good faith when she offered to sell all causes of action held by the estate to Dieffenbach.[5]

This Court reviews the Bankruptcy Court's factual findings as to the thoroughness, competence and good faith performance of fiduciary duties by Trustee Katz for clear error and finds that no clear error was committed. The Bankruptcy Court's decision not to remove Trustee Katz finds support in the consistency between Katz's conclusions and those of the first Trustee, Napolitano, who also found that no assets of value existed for the estate. The Bankruptcy Court's decision also finds support in the position of the U.S. Trustee, which objected to the removal of Trustee Katz and testified to her thoroughness, diligence, and "willingness to look under every peach basket trying to find hidden assets" during the January 31, 2006 hearing. The U.S. Trustee testified that after Dieffenbach objected to the findings of Trustee Napolitano, Katz was chosen to be the second Trustee specifically because these qualities would be necessary to the second Trustee, who would "be under Mr. Dieffenbach's microscope."[6]

Finally, the Bankruptcy Court's decision not to remove Katz as trustee was not clear error

---

[5] Dieffenbach bases this argument on assertions that Katz (1) failed to acknowledge an undisclosed $64,000 in cash assets of the estate, (2) did not include in the estate the debtor's beneficial interest in the marital residence, to which title was held by the debtor's wife, (3) did not agree with Dieffenbach's conclusion that a "resulting trust" in the real estate existed via "a contingent and unliquidated equitable lien" consistent with the Bankruptcy Court's decision in the case of In re Bassett, 221 B.R. 49 (Bankr. D. Conn. 1998), (4) did not include in the estate assets the "implied partnership" interest in the "Bird in Hand" antiques business of the debtor's wife, (5) refused to provide Dieffenbach with copies of the debtor's tax returns and "other relevant information," (6) did not withdraw her Report of June 2, 2005 finding that the estate had no assets, and (7) allegedly refused to meet with Dieffenbach to discuss an itemized settlement of his claims. Dieffenbach also claims on behalf of Fleet Bank that the Trustee was not served with a copy of the Trustee's Report; however, Dieffenbach lacks standing to assert claims on behalf of Fleet Bank and in any case Fleet Bank has not chosen to appear regarding any proceedings since at least August 1, 2005.

[6] Testimony of U.S. Trustee Steven Mackey, Jan. 31, 2006 hearing transcript at 27-28.

in light of Katz's comprehensive Report Regarding Potential Assets of the Estate of June 2, 2005, which addressed in detail all of the issues raised by Dieffenbach prior to 2005, and found none of them to justify re-opening the estate or pursuing any assets. Katz exercised her discretion and business judgment as trustee in deciding not to prosecute litigation relating to the matters brought to her attention by Dieffenbach. Her disagreement with Dieffenbach, one alleged creditor, as to either the existence of hidden assets or his right to information including the tax returns of Mr. and Mrs. Haworth did not constitute any "cause" for her removal.

B.      Request for Damages

Dieffenbach next argues that the Bankruptcy Court should not have denied his request for damages because he is a creditor of the estate who suffered when the Debtor and his wife violated the automatic stay and collected a $10,000 settlement payment from Dieffenbach. This argument is unsuccessful for several reasons.

First, settlement of an unrelated state court claim between the Debtor's wife and Dieffenbach is not precluded by bankruptcy's automatic stay, which prevents creditors of the seeker of bankruptcy protection from collecting against the assets of the bankruptcy estate, but does not preclude the Debtor's non-filing wife from seeking to pursue a judgment or settlement in which she is a plaintiff. The Bankruptcy Court did not commit any error in making its conclusions of law as to this point. Thus Dieffenbach would not be entitled to repayment of the full amount of his $10,000 settlement payment even if he were successful in raising this issue against the Debtor as part of the bankruptcy case.

Second, Dieffenbach's assertion that he is a creditor of the estate is based solely on the alleged possession by the Debtor of two pieces of furniture which the Debtor claims never

belonged to him (but rather belonged to his wife, who ran an antique furniture business). Dieffenbach's labeling of his claim to the furniture as that of a "creditor" of the bankruptcy estate appears merely to be an attempt to revisit in federal court the state court's judgment against him and his subsequent settlement of that judgment. Furthermore, the furniture appears to be located in England, and thus is not easily subjected to normal debt collection procedures available to the Trustee or the Bankruptcy Court, even if it were appropriately included in the assets of the estate. Though the Bankruptcy Court did not make any direct findings that Dieffenbach was not a creditor, its disposition of the case implies that conclusion. In light of the lack of evidence supporting Dieffenbach's claims, and the evidence in the record suggesting that these claims were an outgrowth of state court proceedings that had been resolved prior to the resolution of the bankruptcy case, a conclusion that Dieffenbach was not a creditor of the estate would not have been clear error.

Third, Dieffenbach had the opportunity to pursue his claims for damages in the original state court proceeding but (a) failed to file a counterclaim in that proceeding, and (b) entered into a stipulated judgment and settlement in that proceeding. The Bankruptcy Court did not err in concluding that re-opening the bankruptcy case was not an appropriate method for Dieffenbach to attempt to pursue these claims.

Fourth, Dieffenbach's assertion that the Bankruptcy Court did not consider the merits of his argument is not supported by the evidence. Judge Shiff re-opened the bankruptcy case and appointed a second Trustee who re-examined the estate over the course of approximately one year solely on the basis of Dieffenbach's complaint, and then held several hearings to consider the progress of Trustee Katz's search for assets before ultimately deciding, in agreement with

Trustee Katz, that no assets existed and that Dieffenbach had more than ample opportunity to be heard.

In short, this Court finds no reason to believe that the Bankruptcy Court committed clear error in agreeing with both Trustees and with the U.S. Trustee that there were no assets properly pursued for the benefit of the estate and its creditors. Dieffenbach did not show cause for the removal of Trustee Katz. He did not show that Katz committed intentional misconduct or even negligence in her search for hidden assets of the estate. He did not show that he had been actually injured by her actions, or that fraud had been committed by either Katz or Napolitano.

## IV. Conclusion

For the foregoing reasons, the orders of the bankruptcy court are AFFIRMED. The Clerk is ordered to close this case.

**SO ORDERED** this 29th day of October 2008, at Hartford, Connecticut.

    /s/ Christopher F. Droney
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE